IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KENNETH RAY GOLDSMITH, #129296                                    PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:14cv626-FKB

DANIEL STRICKLAND, ET AL.                                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment [48] and a supporting
memorandum filed by Defendants Daniel Strickland, James Rutland, Ben Blaine, Eddie
Thompson, Bryan Bailey,[1] David King, and Pattie Temple ("Rankin County Defendants").  In a
previously entered Memorandum Opinion and Order [52], the Court granted the motion for
summary judgment based on Plaintiff's failure to exhaust administrative remedies.  Plaintiff
moved for reconsideration, [55], [56], and he attached previously unsubmitted papers that he
argued demonstrated his attempts at exhaustion.  Based on these submissions, the Court granted
Goldsmith's motion for reconsideration, withdrew the Memorandum Opinion and Order [52], set
aside the Judgment [54], and re-opened the case.  Defendants were given until October 17, 2016,
to file a rebuttal, but made no additional filing.

Having considered the filings, the Court finds that the Motion for Summary Judgment
[48] should be granted in part and denied in part.

I.  Facts and Procedural History

Plaintiff is a former pretrial detainee at the Rankin County Jail ("Jail"), and he is
currently housed at South Mississippi Correctional Institution.  According to Plaintiff's

---

[1]Although "Brian Bailey" is named as a defendant, counsel makes clear that the proper
spelling of defendant's name is "Bryan Bailey." *See* [49] at 1.

complaint, the Rankin County Defendants violated his constitutional rights when he was incarcerated at the Jail in 2013 and 2014, as a pre-trial detainee and after he was convicted. Defendants are the Sheriff of Rankin County, Bryan Bailey; James Rutland, Chief of Security; Daniel Strickland, a Jail officer; Ben Blaine, Jail Administrator; Eddie Thompson, Chief Deputy; David King, Jail shift leader; and Pattie Temple, Jail employee.

The Court held an omnibus hearing[2] in this matter, at which time it conferred with Plaintiff and counsel for all Defendants in this suit founded upon 42 U.S.C. § 1983. At that hearing, the parties consented to have a United States Magistrate Judge conduct any and all further proceedings in the case and order the entry of final judgment, and the District Judge subsequently entered an order of reference. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Goldsmith is proceeding in this matter *in forma pauperis* ("IFP") and *pro se*.

Goldsmith sets forth his claims in his original Complaint [1], in a Response [10] to an Order from the Court, and in his omnibus hearing testimony [48-2], as follows:

1. Goldsmith alleges claims of due process violations related to disciplinary procedures, resulting in lockdowns and/or periods of isolation, on the following occasions:

   a. January 26, 2013, to March 18, 2013. [1] at 5; [48-3] at 9-19, 89;

   b. January 29, 2014, to February 26, 2014. [1] at 8; [48-2] at 27-28; [48-3] at 89;

   c. May 24, 2014, for four days. [1] at 9; and

   d. June 18, 2014, for seven days. [1] at 9, [48-2] at 29; [48-3] at 113.

2. Goldsmith complains of the conditions of confinement while he was in isolation. He complains of cold food served without regard to proper food-handling precautions, lack of

---

[2]*See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

exercise, no contact with the outside world, and no communication with family during his periods in isolation, including lost mail. [1] at 5, 6, 8, 10.

3. Goldsmith alleges that Defendant Strickland used excessive force against him on January 25, 2013, for which Goldsmith was given a rules violation. *Id.* at 5; [48-2] at 17-22; [48-3] at 21.

4. Goldsmith complains of his conditions of confinement on March 1, 2013, when he alleges that Defendant Blaine made him stand outside in inadequate clothing for one-half day in temperatures around 60 degrees Fahrenheit. [1] at 5; [6] at 1; [10] at 2; [48-2] at 30-32.

5. Goldsmith alleges that Defendants denied him adequate medical treatment on February 13, 2013, when they failed to transport him to a doctor's appointment that he had made prior to his arrest. [1] at 8; [48-2] at 36-37.

6. Goldsmith alleges that the medical staff denied him adequate medical treatment related to a rash that he asserts he contracted during a period of lockdown/isolation in January 2014. [1] at 10; [48-2] at 37.

In a Response [10] to the Court's Order [6] asking for more information about his claims, Goldsmith asserts that Defendant Bailey violated his constitutional rights when he allowed his employees to cause physical harm to him. [10] at 1. He also alleges that Defendant King allowed his employees to "do as they choose." *Id.* In the Response, Plaintiff also asserts that the Jail staff denied him yard call, and that Defendants King, Rutland, Thompson, and Bailey should be held accountable for the denial of yard call. *Id.*

At the omnibus hearing, Goldsmith testified that he wrote letters and grievances related to his complaints about Jail conditions to the Jail's administration. [48-2] at 34. He also testified

that he mailed copies of these letters and grievances to his home for safekeeping.  *Id.* at 33.  The remainder of his testimony essentially reiterated the claims he had made in his Complaint [1] and the Response [10].

Having reviewed the grievances and other documents submitted by Goldsmith as a part of his motion for reconsideration, the Court turns to evaluate Plaintiff's claims.

## II. Discussion

### A.  Summary Judgment Standard

The Rankin County Defendants have filed a Motion for Summary Judgment, asserting several bases for dismissal.  Defendants first argue that Goldsmith has failed to exhaust his administrative remedies, as is required by the Prison Litigation Reform Act ("PLRA"), and, thus, this matter should be dismissed.  Alternatively, Defendants argue that they are entitled to dismissal on the merits of Goldsmith's claims. The Court has considered Plaintiff's submission [55], [56], in response to the Motion for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'"  *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), *cert. denied*, 119 S.Ct. 618 (1998)).  Issues of fact are material if "resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or

would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994)(en banc)(emphasis omitted).  Moreover, the non-moving party's burden to come forward

with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated

assertions," or by only a "scintilla" of evidence.  *Little*, 37 F.3d at 1075.

## B.  Exhaustion

Based on the attachments to Goldsmith's motion to reconsider, [55], [56], the Court will

consider whether Goldsmith exhausted his administrative remedies. Statutory and case law

requires a prisoner to exhaust administrative remedies, regardless of the relief sought.  The

relevant portion of 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995

("PLRA"), states the following:

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a)(Supp. 2000).  In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme

Court held that 42 U.S.C. § 1997e, revised as a part of the PLRA, requires an inmate to exhaust

administrative remedies before bringing an action with respect to prison conditions, regardless of

the relief offered through administrative procedures.  *Booth*, 532 U.S. at 741. The United States

Supreme Court further explained that the PLRA's exhaustion requirement is mandatory and

applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong. *See Porter v.*

*Nussle*, 122 S.Ct. 983 (2002); *see also Jones v. Bock*, 127 S.Ct. 910 (2007)(reaffirming that

exhaustion is mandatory; stating that it is an affirmative defense).

The United States Court of Appeals for the Fifth Circuit has reiterated the principles found in these cases.  In *Gonzales v. Seal*, 702 F.3d 785 (5th Cir. 2012), the Fifth Circuit recognized that exhaustion of administrative remedies prior to suit is mandatory, and that district courts have no discretion to stay § 1983 prisoner cases when they are filed before prisoners have exhausted administrative remedies.  The Fifth Circuit concluded, as follows:

> District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint.  It is irrelevant whether exhaustion is achieved during the federal proceeding.  Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Id.* at 788.  The Court is mindful, however, that because "exhaustion is an affirmative defense, the burden is on [the movant] to demonstrate that [a prisoner plaintiff] failed to exhaust available administrative remedies."  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).[3]

"It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion."  *Walker v. East Miss. Corr. Facility*, 2013 WL 4833901 (S.D. Miss. Sept. 11, 2013)(citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)(finding that filing an initial grievance, without more, did not equate to exhaustion)); *see also Tompkins v. Holman*, 2013 WL 1305580 (S.D. Miss. Mar. 26, 2013)(dismissing § 1983 complaint for failure to exhaust administrative remedies when prisoner filed a grievance, but did not complete the ARP before filing his lawsuit). Exhaustion is mandatory, "irrespective of the forms of relief sought and offered through

---

[3]The Court previously denied Defendant Keefe's Motion to Dismiss [16] based on lack of exhaustion of administrative remedies because Defendant Keefe did not meet its burden to present evidentiary support for its position that Goldsmith did not complete the grievance procedure.  *See* Order [52]. The Court, however, granted the Motion to Dismiss on other grounds.

administrative avenues." *Booth,* 532 U.S. at 739.

Despite this seemingly bright line rule, the Fifth Circuit has carved out exceptions. The Fifth Circuit has recognized as an excuse from the exhaustion requirement "circumstances where administrative remedies are inadequate because prison officials have ignored or interfered with a prisoner's pursuit of an administrative remedy." *Johnson v. Ford,* 261 Fed. App'x 752, 755 (5th Cir. Jan. 14, 2008) (citing *Holloway v. Gunnell,* 685 F.2d 150, 154 (5th Cir. 1982)). Moreover, when a prisoner's grievance is denied acceptance into the administrative remedy program of a facility, the prisoner no longer has an available administrative remedy. *Berry v. Wexford Health Sources*, 2016 WL 4030934 (S.D. Miss. Jul. 26, 2016)(citing *Dillon*, 596 F.3d at 260). A prisoner's failure to exhaust "may be excused where dismissal would be inefficient or would not further the interests of justice or the purposes of the exhaustion requirement." *Id.* (citing *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *overruled by implication on other grounds, Jones*, 127 S.Ct. at 920-921); *see also*, *McDonald v. Cain*, 426 Fed. App'x 332 (5th Cir. 2011)(vacating dismissal of complaint when prisoner provided documents to support allegations of inadequacy of prison review process.). Factual disputes related to exhaustion may be resolved by a judge without resort to a jury. *Dillon*, 596 F.3d at 272.

The Rankin County Defendants have provided a copy of the grievance procedure at the Jail. [48-6]. They have also provided evidence demonstrating, and Goldsmith admitted at the omnibus hearing, that he was familiar with the grievance procedure at the Jail. *See* [48-2] at 40. Furthermore, on four different occasions in 2013 and 2014, Goldsmith participated in a Jail Orientation Program and signed a form acknowledging that he understood Jail procedures. [48-3] at 122, 124, 130, and 134. The Jail has provided copies of his entire jail record, *see* [48-3], and it contains only two grievance letters addressed to Defendant Rutland. [48-3] at 86, 127.

In his motion for reconsideration, Goldsmith presents various copies of grievances and letters that he presumably claims to have submitted to proper Jail authorities in an effort to exhaust his administrative remedies. [48-2] at 33-35; [55]; [56].  In evaluating Goldsmith's claims below, the  Court will also evaluate his submissions to determine if they relate to his claims.

## C.  Plaintiff's Claims

### 1.  Due process claims related to rules violations.

Goldsmith alleges that he was denied due process with regard to the several rules violations he was given during his time at the Jail.  He first argues that his due process rights were violated in relation to a rules violation he received on January 26, 2013, for the altercation with Defendant Strickland on January 25, 2013.  However, he admits that he did not appeal the rules violation, [55] at 27,[4] and the Jail records show that Goldsmith chose to "accept the decision of the hearing Officer," and not appeal. [48-3] at 9. Accordingly, Goldsmith failed to exhaust the due process afforded him in the disciplinary proceeding regarding the January 25, 2013, incident.  Defendants are, therefore, entitled to summary judgment on this claim.

Goldsmith alleges that he was denied his due process rights with regard to the rules violation that he received on or about January 30, 2014.  According to the record, on that date he was given a rules infraction for stabbing another inmate with a pen. [48-3] at 26-31, 89. Goldsmith failed to submit any copies of grievances or letters related to this incident. Accordingly, the Court finds that Defendants are entitled to summary judgment on this claim for Goldsmith's failure to exhaust available administrative remedies.

---

[4]Goldsmith's Motion to Object [55] is duplicated at his Motion for Reconsideration [56]. For ease of reference, the Court will refer only to the filing at [55].

Goldsmith alleges that his due process rights were violated when Defendants subjected him and other inmates to a loss of privileges and lockdown for four days on May 24, 2014, when authorities found that tobacco had been spit into a garbage can in the zone in which Goldsmith was housed.  In a May 24, 2014, letter addressed to Defendants Blaine, Rutland, and King, Goldsmith complains of the loss of privileges for four days. [55] at 43-44.  Although this letter is not in the form of a grievance, it is addressed to officials who might handle the grievance process at the Jail.  Accordingly, in an abundance of caution, the Court will address the merits of this claim.

The Court finds that Defendants are entitled to summary judgment on the merits as to Goldsmith's claims that his rights were violated by the subject loss of privileges for four days. In *Pichardo v. Kinker*, 73 F.3d 612, 612-13 (5th Cir. 1996), the Fifth Circuit held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim" because it "simply does not constitute a deprivation of a constitutionally cognizable liberty interest."  A prisoner § 1983 suit making such a due process claim is frivolous under 28 U.S.C. § 1915A.  *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998).  In his filings, Plaintiff admits that all prisoners were locked down and lost privileges for a period of four days in response to the discovery of tobacco in a trash can.  Because this can be characterized as administrative segregation with loss of privileges for a limited period of time – only four days – it can be described as "an incident to the ordinary life of a prisoner" and does not rise to the level of a constitutional violation. Accordingly, Defendants are entitled to summary judgment on this claim.

Goldsmith alleges Defendant Temple violated his due process rights on June 18, 2014, when she sentenced him after a hearing on a rules violation for hoarding medication. [1] at 9,

[48-3] at 113.[5]  Although Temple sentenced him to twenty days in lockdown, he alleges in his

complaint that he was released after seven days. [1] at 9.[6]

In a letter addressed to Defendants Rutland, King, and Thompson, Goldsmith asserted

complaints about the June 18, 2014, hearing, including that his due process rights were violated.

[55] at 39.  Plaintiff did not provide evidence as to when, where, or to whom he submitted this

letter, and the Court, therefore, lacks an evidentiary basis to determine whether Plaintiff

exhausted his administrative remedies on this claim.[7]  Nevertheless, a review of the merits of the

claim attacking the length of time he spent in isolation on this rules violation demonstrates that it

does not rise to the level of a constitutional violation.  Pursuant to *Sandin v. Conner*, liberty

interests protected by the Due Process Clause "will be generally limited to freedom from

restraint which . . . imposes atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life."  *Sandin*, 515 U.S. 472, 483-484 (1995).   Although he

ultimately spent seven days in "the hole" in lockdown, this length of time spent in administrative

segregation does not constitute a constitutional violation.  *See Smith v. Anderson*,  2013 WL

1182995 (S.D. Miss. Feb. 13, 2013), *adopted*, *Smith v. Anderson*, 2013 WL 1182984 (S.D. Miss.

Mar. 21, 2013)(finding that denial of privileges for three months and placement in administrative

segregation for twenty days did not constitute a restraint which imposed an atypical and

---

[5]Goldsmith's claims against Temple are based solely on the rules violation she gave him on June 18, 2014.

[6]According to the Rankin County Jail Rules signed by Goldsmith on April 14, 2014, the penalty for hoarding medication is a lockdown period of thirty days. [48-3] at 129.

[7]Other records of disciplinary actions involving Goldsmith are in the record.  *See, e.g.,* [48-3] at 9-10, 125-126, 132-133.  Each of these disciplinary actions states whether he has been confined to quarters without privileges for a certain period of time, refers to his right to appeal the decision, and references that a hearing will be conducted on the appeal at the earliest date. *Id.*

significant hardship under *Sandin*).

In the letter to Defendants Rutland, King, and Thompson, Goldsmith argues that Temple violated his due process rights and showed "bias" when she did not conduct the hearing in accordance with the Rankin County rules and regulations. [55] at 39.  Otherwise, he does not specify in what manner Temple violated the rules and regulations.  *See id.*

The Fifth Circuit's case law is clear "that a prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met."  *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). [1] at 9*; see Hernandez v. Estelle,* 788 F.2d 1154, 1158 (5th Cir.1986) (holding that the mere failure of a prison official to follow the prison's own regulation or policy does not amount to a constitutional violation); *McGowan v. Peel,* No. 3:06cv659–DPJ–JCS, 2007 WL 710154, at *1–*2 (S.D.Miss. March 6, 2007) (internal citations and quotations omitted) (dismissing plaintiff's complaint pursuant to 28 U.S.C. § 1915 and stating that a "prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met").

Even when considering Goldsmith's version of events, it appears that "constitutional minima" were met. Goldsmith admits that he had notice of hearing, he had an opportunity to plead not guilty, he had a hearing, he was sentenced to a period of twenty days in lockdown –a discipline within the thirty-day limit[8] prescribed by the Rankin County Jail Rules –yet only served seven days, and he disputed or appealed the decision with supervisory officers through a letter.  The record shows that an officer other than Temple found Goldsmith in possession of several pills, some of which required a prescription; Goldsmith was given notice of his infraction

---

[8]*See* [55] at 8.

of hoarding medications; he had a hearing before Temple, at which he pleaded not guilty; he was

found guilty; and he was sentenced to time in lockdown. [48-3] at 113.  Considering these facts,

and based on the record before the Court, the Court finds that this claim does not rise to the level

of a constitutional violation.  Accordingly, summary judgment is granted in favor of Temple as

to all of Goldsmith's claims against her stemming from the June 18, 2014, rules violation.

    2.  Conditions of confinement while in isolation.

Goldsmith asserts claims regarding his conditions of confinement while in isolation from

January 26, 2013 to March 18, 2013, and from January 29, 2014 to February 26, 2014.  He

complains of cold food, lack of exercise, being locked down for twenty-four hours per day for

seven days a week, lack of access to news media, lack of communication with family, and lack

of access to disciplinary due process. [1] at 5, 8.  He alleges that he filed several grievances, but

received no responses.  *Id.*  In the Defendants' motion for summary judgment, they assert that

Goldsmith failed to submit formal grievances on the appropriate paperwork and, instead,

submitted only two informal grievances in the form of letters. [48-3] at 86-87, 127.

Attached to Goldsmith's motion for reconsideration are several grievances and letters to

Jail authorities related to lockdown and isolation conditions.  Goldsmith does not, however,

provide evidence as to when, where, or to whom he submitted the grievances or letters.  While

some of the grievances and letters do not relate to claims Goldsmith asserts in this case,[9] several

of them do.  In a February 9, 2013, grievance, Goldsmith admits that he received medication for

---

[9]In a grievance at [55] at 19, dated February 26, 2013, Goldsmith complains that he is not
receiving his "diet."  While he has made claims of cold food in this action, he has not asserted
claims related to the type of food or diet he received while in isolation. *See also* [55] at 23, 24,
and 25. There are also several diary entries, memos, and receipts which the Court does not
interpret as attempts to exhaust, and some items that relate to claims dismissed against
Defendant Keefe.  *See* [55] at 3-6, 20, 21, 23, 24, 26, 29-31, 34-37, 45.

his lungs, but writes concerning conditions in lockdown, including the length of time spent in lockdown, his health, and his need for "fresh air."  [55] at 38.  In a grievance dated February 13, 2013, he expresses dissatisfaction with the conditions of confinement while in lockdown, including lack of exercise, lack of communication, and lack of hygiene. *Id.* at 27-28. A grievance, dated February 20, 2013, contains Goldsmith's assertions regarding his diet, which is not at issue in this action, but also contains accusations of lack of exercise, lack of phone calls, and lack of hygiene, all included in his complaint.  *Id.* at 17.  In the February 20 grievance, he also complains that officials have not responded to two prior grievances dated February 9 and February 13, 2013.  *Id.*  In a grievance dated March 3, 2013, he writes of denial of visitation by a preacher and other communication privileges while in isolation. *Id.* at 22.  In a March 14, 2013, letter addressed to Defendant Blaine, Goldsmith writes of his conditions of confinement in lockdown and alleges lack of exercise, inadequate medical services, and lack of communication with the outside world. *Id.* at 32.

These grievances and letter raise questions as to whether Goldsmith attempted to pursue his administrative remedies on his claims related to the conditions of confinement in lockdown or isolation from January 26, 2013, to March 18, 2013.  Specifically, his grievances and letters submitted to this Court address his claims of cold food, lack of exercise, being locked down for twenty-four hours per day for seven days a week, no contact with the outside world, lack of communication with family, and lack of access to any disciplinary due process.  Due to the lack of sufficient record evidence, the Court finds that an evidentiary hearing should be held to determine whether Goldsmith exhausted his available administrative remedies for his conditions of confinement claims related to his administrative segregation from January 26, 2013, to March 18, 2013.  But Goldsmith has not submitted evidence as to when, where, or to whom he

-13-

submitted these grievances or letters.

However, because the grievances and letter do not relate to his time in isolation from January 29, 2014, to February 26, 2014, they do not represent any attempt by Goldsmith to exhaust administrative remedies as to claims related to this time period. Accordingly, Plaintiff's conditions of confinement claims based upon the time period from January 29 to February 26, 2014, are hereby dismissed on the basis that Goldsmith failed to exhaust administrative remedies.

The Court notes that the Rankin County Defendants did not address the merits of Plaintiff's conditions of confinement claim related to the time period from January 26 to March 18, 2013. The deadline for these defendants to file a summary judgment motion on the merits of that claim is hereby set as **March 20, 2017.**

3. Excessive force on January 25, 2013.

a. Exhaustion of administrative remedies

Goldsmith alleges that Defendant Strickland used excessive force against him during an incident that occurred on January 25, 2013. In their motion for summary judgment, Defendants argue that Goldsmith failed to exhaust his administrative remedies related to this claim. In a grievance dated February 9, 2013, Goldsmith writes, in reference to the January 25 incident, that "staff jumped on me for kicking on [the] cell door." [55] at 38. In addition, Goldsmith's letter addressed to Defendant Blaine, dated March 14, 2013, describes the January 25 incident and his conditions of confinement while in isolation, and asserts that no one had responded to his grievances on several matters. *Id.* at 32-33.

This grievance and letter also raise questions as to whether Goldsmith attempted to pursue his administrative remedies on this claim. But again Goldsmith has not submitted

evidence as to when, where, or to whom he submitted this grievance or letter.  The Court finds, therefore, that an evidentiary hearing should also be held on whether Goldsmith exhausted his available administrative remedies on his excessive force claim against Defendant Strickland.

### b.  Claims against Defendants Rutland, Blaine, Thompson, Bailey, and King

This finding, however, does not preclude the grant of summary judgment in favor of Defendants Rutland, Blaine, Thompson, Bailey, and King on this claim in their individual capacities.[10]  As to these claims, "the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F.Supp. 931, 943 (S.D. Tex. 1996).  Supervisory officials, moreover, "cannot be held liable for the actions of subordinates under any theory of vicarious liability."  *Id.* "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury."  *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992).

Goldsmith does not allege that Defendants Rutland, Blaine, Thompson, Bailey, or King played any role in the January 25 incident.  Goldsmith does not complain that the foregoing defendants implemented unconstitutional policies that causally resulted in his injury. Moreover, at the omnibus hearing, Goldsmith testified that he had sued Rutland, Blaine, Thompson, Bailey, and King because they acted as Strickland's supervisors. [48-2] at 39-40.  Accordingly, because Goldsmith's claims against these Defendants sound in *respondeat superior*, they cannot stand in this § 1983 action, and Defendants Rutland, Blaine, Thompson, Bailey, and King are entitled to summary judgment in their favor in their individual capacities.

### c.  Claim against Defendant Strickland

---

[10]Plaintiff has not alleged claims against Defendants in their official capacities.

The Court now turns to the merits of Plaintiff's excessive force claim against Defendant Strickland based on the January 25, 2013, incident. "The core inquiry in an . . . excessive use of force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *McClyde v. Jackson*, 405 F. App'x 891, 893 (5th Cir. 2010)(per curiam)(quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In determining whether force is applied in a "good faith effort to maintain or restore discipline" and not "maliciously and sadistically" to cause harm, the Court must consider several factors: "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Rankin v. Klevenhagen*, 5 F.3d 103, 107 n.6 (5th Cir. 1993). The Court has found that the "degree of force exerted and the extent of physical injury inflicted that together amount to a constitutional deprivation must, of course, be determined by the facts of a given case." *Id.* (quoting *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981)). Furthermore, after *Hudson*, some injury is still required to show a constitutional violation. *Id.* at 108.

Goldsmith asserts that Strickland physically "attacked" him after Goldsmith knocked or kicked on the door of the cell in which he was housed. [1] at 5; [48-2] at 17-20. At the omnibus hearing, Goldsmith testified that he had hit the cell door in an effort to get help because he was having trouble breathing. [48-2] at 17. Goldsmith testified that Strickland unlocked and opened the cell door, told him to stop beating on the door, punched him in the face and body, jumped on him, and took him to the floor. *Id.* at 18. He testified that at least two other officers, not named as defendants, also participated in the attack, but that an Officer Spears intervened to stop the altercation. *Id.* at 18, 20.

-16-

Goldsmith asserts that immediately after the event, officers dragged him out of the cell, put him into a wheelchair, and escorted him to the Jail's nurses for medical attention. *Id.* at 20. Within minutes, the nurses administered a breathing treatment in an effort to return his breathing to normal. *Id.* at 21. The nurses also gave him some type of pain reliever and examined him for injuries. *Id.* As for his injuries, Goldsmith testified that he "was basically sore" and "had a few small scratches" on his face, but did not need to go to the hospital, and he did not seek any other medical treatment. *Id.* at 21-22.

A Jail Incident Report (the "Report"), completed by Defendant Strickland one day after the incident, paints a different picture of events. The Report is contained in the records at [48-4] at 4, and Strickland has submitted an affidavit that adopts the Report's description of the incident as a "truthful and accurate description" of the January 25 incident. [48-4] at 1. According to the Report,

> [W]hile I Officer Strickland was working in booking inmate Goldsmith was saying he was going to "piss and shit on the floor" since we haven't taken him to the bathroom. I Officer Strickland tried to explain to inmate Goldsmith that we just brought him back from the bathroom cell. Inmate Goldsmith kept arguing so I went to open the door to speak to him and he pushed the door back on me and slammed it on my right arm. I Officer Strickland pushed the door back open and inmate Goldsmith grab[bed] me by the throat. I Officer Strickland used the least amount of force neccessary [sic] to get inmate Goldsmith off of me[.] I Officer Strickland then used the least amount of force neccessary [sic] to get inmate Goldsmith restrained and to the ground. Sergeant Spears came to the situation and also help[ed] restrain inmate Goldsmith.

[48-4] at 1-2. Strickland avers that he did not use any force against Goldsmith once he was restrained. *Id.* at 2. The affidavit also states that based on Strickland's observations, Goldsmith "did not suffer any bruises or abrasions during this incident." *Id.* As a result of the incident, Goldsmith was charged with and found guilty of the rules violation of assault on a law enforcement officer. [48-3] at 9-10; [48-4] at 5-6.

-17-

While Goldsmith testified that as a result of the incident, he was only sore with a few scratches to his face and that he did not need to go to the hospital for treatment, his injuries are only part of the inquiry.  "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

In this case, Strickland asserts that he used "the least amount of force" necessary to restrain and control Goldsmith. [48-4] at 1-2.  However, similar to the facts in *Wilkins* and *Hudson v. McMillian*, 503 U.S. 1 (1992), Goldsmith alleges that Strickland and other officers punched him in the face and body, then took him to the floor.  Goldsmith admits that he had been striking the cell door in some manner in an effort to gain the attention of officers.  While both accounts agree that Defendant Strickland opened Goldsmith's cell door, from that point the descriptions of the ensuing physical confrontation significantly differ.  Strickland also argues that Goldsmith's injuries were minimal and that the "conclusive proof" of the need for the application of force is evidenced by Goldsmith's conviction, in a disciplinary proceeding, of a rules violation for assaulting an officer. [49] at 17.  Nevertheless, *Wilkins* directs that the "core judicial inquiry" is whether the nature of the force "was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 39 (quoting *Hudson*, 503 U.S. at 7).  Based on differing accounts of the manner in which the physical confrontation began and of the amount of force that was applied, the Court finds that there is a genuine dispute of material fact as to whether the force was applied in a "good faith effort to maintain or restore discipline" or "maliciously and sadistically" to cause harm.  Accordingly, Defendant Strickland's motion for summary judgment on the merits of Goldsmith's excessive force claim is denied. If this claim is

not dismissed for failure to exhaust administrative remedies, the Court will set this claim for a jury trial.

4.  Exposure to elements on March 1, 2013.

Goldsmith complains that on March 1, 2013, Defendant Blaine caused him to stand outside for four hours in inadequate clothing while Blaine and others conducted a training exercise in his housing unit.  Goldsmith complains that the temperatures were around 60 degrees Fahrenheit.  The Court has reviewed all of the documents Plaintiff attached to his motion to reconsider, and Goldsmith has failed to submit any grievances or letters that relate to this claim. One grievance, dated March 3, 2013, discusses denial of visitation and other communication privileges while in isolation, but makes no mention of the alleged March 1 incident. [55] at 22. Accordingly, Defendants are entitled to summary judgment on the basis of failure to exhaust administrative remedies as to this claim.

5.  Denial of medical treatment claims.

Plaintiff has alleged that Defendants denied him adequate medical treatment in two respects.  First, Goldsmith alleges that Defendants denied him adequate medical treatment for a rash that he contracted while in isolation.  Second, Goldsmith alleges that Defendants failed to transport him to a doctor's appointment for a lung condition on February 13, 2013, that he had made with a doctor before he became incarcerated.

Having reviewed the grievances and letters submitted by Plaintiff to this Court, the Court finds no grievance or letter addressing inadequate medical treatment for a rash.  Accordingly, Defendants are entitled to summary judgment for failure to exhaust administrative remedies on Goldsmith's inadquate medial care claim related to a rash.

Goldsmith's March 14, 2013, letter to Defendant Blaine does, however, state that he

-19-

"wrote the Captain and Sheriff about doctors appointments on a grievance form" but received "[n]o answer" and that he "assume[d]" an officer "destroyed them." [55] at 33.  Considering these allegations in the March 14, 2013, letter, the Court finds that the evidentiary hearing should include whether Goldsmith exhausted available administrative remedies for his inadequate medical care claim in relation to the February 13, 2013, doctor's appointment.

Again, the Court notes that the Rankin County Defendants did not move for summary judgment on the merits of these claims.  The deadline for Defendants to file a summary judgment motion on Plaintiff's inadequate medical care claim related to the February 13, 2013, appointment is **March 10, 2017.**

<u>III.  Conclusion</u>

For the reasons explained in this Opinion, the Court finds that the Motion for Summary Judgment filed by the Rankin County Defendants should be granted in part and denied in part. The Court finds that an evidentiary hearing should be held on whether Plaintiff exhausted his available administrative remedies on the following claims:

(1) conditions of confinement while in administrative segregation from January 26, 2013, to March 18, 2013;

(2) excessive force against Defendant Strickland in relation to the January 25, 2013, incident; and

(3) inadequate medical care related to the February 13, 2013, doctor's appointment.

The evidentiary hearing is hereby set for February 22, 2017, at 11:00 a.m. before the undersigned in Courtroom No. 5D of the United States Courthouse, 501 East Court Street, Jackson, Mississippi 39201.

In addition, the Court hereby sets a deadline of **<u>March 10, 2017</u>**, for Defendants to file a

summary judgment motion on the merits of Plaintiff's following claims:

(1) conditions of confinement while in administrative segregation from January 26, 2013, to March 18, 2013; and

(2) inadequate medical care claim related to the February 13, 2013, doctor's appointment.

Summary judgment is hereby granted on all other claims asserted by Plaintiff in this case, and all such claims are hereby dismissed with prejudice.

SO ORDERED, this the 7th day of February, 2017.

　　　　　　　　　　　　 /s/ F. Keith Ball
　　　　　　　　　　　　 UNITED STATES MAGISTRATE JUDGE